Next case we'll hear is Mook v. Hall and Mr. Schnetzler. Good morning, your honor. May it please the court, Nathan Schnetzler on behalf of the appellant Andrew Hall. Your honors, this case is before the court on the district court's denial of qualified immunity to Mr. Hall with respect to his former employee's claim of interference under the Family Medical Leave Act. The issue here today is really whether a poorly worded regulatory scheme can support clearly established law so as to eliminate the defense of qualified immunity. It is our position, your honors, that in November of 2021, when the events that issue in this case occurred, the law was clearly required a government employee, a government employee, employer, excuse me, to provide an employee with a seven-day period to correct certain problems with an FMLA certification form. Those certain problems are whether the form was insufficient or whether the form was incomplete. In this case, that was not the issue that the rather Mr. Hall had concerns about whether the form was authentic or not. To summarize very briefly the facts, the the form that was provided to Mr. Hall had clearly been filled out by Mr. Mook himself when it said there is a clear section that says it's supposed to be filled out by the health care provider and in addition to that the form was not signed by the actual physician that was treating Mr. Mook's mother for whom he was trying to take FMLA leave. It was signed by a nurse ostensibly on behalf of the physician and in turn Mr. Hall's office reaches out to the physician's practice to determine whether or not the physician actually authorized the nurse to sign the document. When the physician's office responded that the physician had not seen the actual document, had not authorized the the nurse to sign it, Mr. Hall ended up terminating Mr. Mook's employment. Do we make anything of that? I mean, I understand your argument on the construction of the statute and want to hear about that in a little bit but, you know, suppose one were to read these facts and say, you know, even as alleged by, um, the defendant, you know, I mean, it seems like a pretty hasty employment termination, um, and maybe that's wrong. I'm, I'm just raising that because if, if, if they could be, you know, if, if, if given a, even given a form that's even been filled out maybe too much by the employer and given it to a nurse and the nurse signs it, um, anyway, just optically it looks like a pretty drastic response to that even under the maybe the worst light. Does that matter? I mean, I'm probably not really before us as I think the basis is what the statute says or doesn't say but anyway, I'm just, just raise that. No, it is a good question, Judge Quattlebaum, and I think for purposes, um, if the case goes to trial that absolutely is going to be an issue for the jury to decide but since we're here under the collateral order doctrine under an interlocutory appeal on qualified immunity, the facts really aren't an issue based on the party's positions and really the, the, it's a pure question of law about how, whether or not these regulations clearly establish, um, a, a correction or cure period if a form is considered to be inauthentic by the employer. Can I ask you about that? If we, hypothetically, if we agreed with you that it's not clearly established that the employer had to, um, had to go through this process that the district court says, then we would remand for the district court to apply qualified immunity, right, to grant your client immunity. Um, but isn't there a logically antecedent question of whether qualified immunity even applies in the FMLA context? That has certainly been raised by the appellee on appeal for the first time. Um, at the district court level, uh, Mr. Mook did not conceded that FML, uh, qualified immunity applied to the FMLA. Um, and so I think that... It's definitely waived. Um, but, you know, courts often address a logically antecedent legal question. You know, the hypothesis is the parties can't, you know, agree on incorrect legal premises, right, and that we have to confront them. Um, so, you know, can we confront it? I think we can. Do you have... What's your position or your argument on that? Our position that since it wasn't raised below, um, if that, if that question needs to be addressed, it ought to be, uh, addressed by the district court in the first instance. That's a legal question. There's nothing really facty about it, and we're here on qualified immunity. It's the only way you got in the door, so it seems like we can answer it just as well, can't we? You addressed it in your brief. We addressed it in our brief, yes, and Judge this panel absolutely can address it, I think, and that's because, um, as we've noted that other circuit courts have applied it. Uh, district courts within the Fourth Circuit have applied qualified immunity to the FMLA. Um, and so... Do you need, just to follow up on that, and I want to let you... Do you contend that at present there's anything lacking other than a first instance district court take on the issue that we need to decide that we don't have, don't have now? I mean, have you, do you feel like you've been able to brief your position sufficiently? Um, I mean... I think we have briefed it sufficiently. That's probably a loaded question because it makes it sound like you haven't done a good job. I didn't mean that. I just, the first time you responded was on reply, and, and I just wanted to make sure, you know, that you didn't have an issue besides the fact that it hadn't been addressed by the district court first. And Judge Quattlebaum, I would, um, certainly appreciate additional time. Obviously, that argument was sent to us and we were on our heels, uh, trying to draft a reply brief to deal with the pretty substantial argument that went to this whole whether or not the FMLA, I mean, excuse me, qualified immunity even applied to the statute. Um, if the court were inclined to address that issue first and not assume, as the district court did, that it does apply, um, we would certainly appreciate the opportunity for, for additional briefing if that would be allowed. Um, but I think as we've laid out in our reply brief, um, we do believe that qualified immunity, uh, is applicable to FMLA. It's been found, uh, qualified immunity is not limited just to Section 1983 claims. There are a number of, uh, decisions that have applied it, uh, in various other statutory contexts. More importantly, the defense provided by the statute is an affirmative defense that would require trial on it and qualified immunity is intended to protect the official from trial. And I don't know how any affirmative defense could, uh, in a statute could deny, uh, qualified immunity to, uh, uh, to a public official, uh, uh, forcing him to raise the, uh, qualified defense and, and, and try that issue. And yes, Judge Niemeyer, that's what we pointed out. If, if Congress intended to abrogate qualified immunity, it should have specifically said so when it enacted the Family Medical Leave Act. Well, is that, I mean, is that the right analysis? The Supreme Court seemed to say, you know, first we ask whether the tradition of immunity is so rooted in the common law, right, that has been kind of adopted into this statutory scheme and all the policy reasons support it. If we find all of that satisfied, then we would expect Congress to speak specifically if they're going to abrogate this great history and tradition of common law that has these immunities. So the Supreme Court goes through that analysis to determine that, all right, 1983 brought with it, uh, these immunities and we'd expect Congress to speak clearly. But we have to go through that analysis first, right, to determine whether the FMLA brought with it, you know, when Congress enacted it, it had these traditional immunities that typically adhere to these sorts of claims, whether it had those in mind or not. We, we can't just jump to the conclusion that every single statute and every single cause of action gets immunity and we expect Congress to speak clearly otherwise, right? So we have to start at the beginning of the analysis. Well, and that's where I think particularly like perhaps in the Wyatt case from the Supreme Court that addresses this specifically, you know, one of the issues that I found that distinguishes Wyatt from the situation at hand was that Wyatt was looking at whether or not qualified immunity should apply to private parties. So, you know, you have a situation where private individuals certainly haven't been entitled to any sort of immunity in that context, in that case. And here, I think there is a very developed body of law that qualified immunity has been afforded to, to government officials, um, acting in their discretion, um, and absent intentional or reckless conduct that they've been entitled to assert that defense. And so I think... Outside of 8, 1983 and Bivens, is there a Supreme Court case that does that? I can't think of one off the top of my head, your honor. I know, I don't believe there was one-sided in the briefing. Um, if I may, I do just want to point out why, uh, specifically just so that the courts are aware why these regulations, um, do not clearly establish this, uh, seven-day cure period for purposes of the authentication piece. And number one, I think is just a basic principle that when, when you're, when an employer is presented with a document that appears perhaps maybe false or has been submitted under false pretenses or whatever, authentication, handing it back to the employee and saying, I need you to have this authenticated by the physician, it doesn't really make much sense. Um, and I think that the regulations, uh, really actually kind of identify that because it, it, if you look at, uh, 29 CFR 825.305C and together with, uh, 825.307A, you know, authentication is, is left out in several areas and, and even more so, um, the regulations, um, set out, you know, some specifics about clarification. So they even distinguish between clarification and authentication. I think that's because the regulations envision this, this situation where, you know, an employee is being asked to provide very private health information to an employer. And in order to protect that information, we don't want employers just going out and contacting someone's physician and getting that protected information. And so whether, if the, if the document is insufficient, um, they need additional information that would, if the regs don't permit the employer to ask the physician for that, if it's incomplete, if the, if there's a blank in the document, the regs don't permit an employer to go directly to the physician. And if it's, if it's, if there needs to be clarified, again, that's going to require additional information or a back and forth. Text wise, it seems to me that you're, you're doing the common sense analysis, but text wise, it seems to me you're, uh, uh, seem to have a stronger argument because in the C, section C, uh, they refer to incompleteness and insufficiency, which is something that could be completed or made more clear. And that's what they say. And lower in that instruction, they refer to that as such deficiencies. Yes, sir. They use the word deficiencies for those because that's exactly what they are. On the next regulation, when it relates back, it says that, uh, uh, you can only, uh, uh, you need to do it after the employer has given the employee an opportunity to cure any deficiencies, uh, as set forth in C. And the deficiencies are those two things. Uh, but that does not say that the authentication needs to go through that process. It's a time thing that says after those deficiencies are cleared. Well, of course, in this case, there's no deficiency, uh, uh, uh, as defined by this regulation, we only have an authentication issue. And so it doesn't need to go through the cure, but that, I think that you're making in a common sense thing, but I mean, statutorily, uh, the word deficiency is an important word and they use it, define it in C and then they refer to it in, uh, a 20, uh, uh, uh, uh, uh, this next section that we're talking about. Uh, so I'm, uh, it may be ambiguous because it could be a manner as described, but, uh, it seemed to me it's more temporal because the substance of the word authenticate is not subject to cure. Authenticate is, it's a false document. Uh, and, uh, so it, uh, it doesn't make quite make sense, but it, uh, it, it says you can only address that after you've given the seven day cure for any deficiency and they use the word any deficiency and any deficiency refers to the word such deficiencies in the prior section, uh, uh, which are incompleteness and insufficiency. It seems to me that maybe the court might've gotten it wrong or at least it's deeply ambiguous. Absolutely, Judge Niemeyer. And then even one step further on the strict textual, um, reading of it, the very last sentence of 825.307A, it says it's the employees is responsible to provide complete sufficient form and to clarify certification if necessary. Again, it leaves out this authentication piece because that's a totally separate animal. Um, and so, and, and particularly in a situation where the, the employee can't actually authenticate the document. Um, I'm out of time. I'll reserve the rest of my time. Thank you. All right. Mr. Layman. Thank you, Your Honor. May it please the court. My name is Brian Layman. I'm the director of William and Mary Law School's Appellate and Supreme Court Clinic. And it is my absolute pleasure this morning to introduce Jack Kardashia. He is a 3L who, uh, under this court's rule 46A will be arguing today's case on behalf of the plaintiff appellee, Daniel Muck. All right. Thank you. Thank you, Professor. All right. Uh, Mr. Kardashia, welcome. Is this your first argument before a court? It is, Your Honor. Well, good. Welcome. And, uh, you'll enjoy many more. We'll hear from you. Thank you, Your Honor. May it please the court. Jack Kardashia on behalf of the appellee, Daniel Muck. We asked this court to dismiss this appeal for lack of jurisdiction or in the alternative to affirm the district court summary judgment denial for two reasons. The first is that this court lacks jurisdiction over this appeal because qualified immunity may not be raised as a defense to Family and Medical Leave Act interference claims. And second, even if this court finds that qualified immunity is available as a defense, the Family and Medical Leave Act's regulations clearly establish an employee's right to a seven-day cure period for any deficiency in the employee's FMLA certification form. So, counsel, if I could, um, if we could start with the first point. It seems to me on whether qualified immunity applies, there's, there's maybe two questions. One is just does it apply? You, you, your argument on jurisdiction seems to be we can't even get to it because it doesn't apply, which feels kind of circular because we, we got to decide whether it applies before we could dismiss it for not having it apply. Seems like that's a pure legal question. It's not that different than whether law is clearly established. So, you know, from a just jurisdictional standpoint based on the nature of the question, I don't understand why we wouldn't have jurisdiction. Now, ultimately, if we were to take that question and address it, you know, here in the first instance, we may or may not agree with you that there's no qualified immunity for FLMA case. I'm having trouble understanding, you know, why we can't, don't have jurisdiction to even, you know, answer that question. So, to the jurisdictional point, Your Honor, it's first our contention that for this court to have jurisdiction, first qualified immunity has to be available as a defense, and then the district court second must deny that qualified immunity defense, but because... Why does it have to be available? I mean, the district court denied qualified immunity because it wasn't, you know, the right wasn't clearly established, and we have jurisdiction to review a denial of qualified immunity to the extent it's based on a Well, so, it is our contention that this is a jurisdictional issue just because qualified immunity has to be available first as a defense, but even if this court finds that the availability of qualified immunity... The district court could deny qualified immunity and say it's not available, but the cases seem to suggest if it denies qualified immunity, it's an interlocutory matter, and really that goes to the whole argument is the whole reason for qualified immunity is that we have public officials doing the business of government, and they, uh, carry on their business, and they're being held liable for personally for damages. It would discourage government service, and so when a government official says I'm going to be held personally liable for damages, in this case, what, a good hunk of money, uh, uh, the question is then did he violate a clearly established law that everybody in his position would know was a violation of the law? Now, the question I have is in this case, it was denied, uh, and so that official, he's still exposed to the damages, and, uh, he certainly can appeal, and the reason for the interlocutory appeal is the immunity protects him from the trial itself, and so if we didn't take jurisdiction over those cases simply because the district court said it's not available, uh, then we would be denying the ability for that official to have us review that issue. So, we do agree, Your Honor, that if the district court had applied the wide framework as we urged this court to adopt today, that the defendant, excuse me, the defendant would have the ability to appeal that decision to this court, but even if this court doesn't find that this issue is jurisdictional, it still can hear this issue. In Gianotto, for example, this court did exercise its appellate jurisdiction to consider the availability of qualified immunity under the False Claims Act, and in that particular case, there is a very similar procedural history. The district court assumed that qualified immunity could be, uh, raised as a defense under the False Claims Act and denied a motion to dismiss on qualified immunity grounds. From there, the case was appealed to this court, and this court noted that the availability of qualified immunity is a threshold question that needed to be addressed despite the fact that it was not raised below. So, even if this issue... So, that's a different issue about, than jurisdiction. Yes. In other words, you want to argue, uh, whether qualified immunity can be asserted, and that would be another, a ground to support the district court, but the official is exposed to these damages, uh, personally, out of his own assets, and, uh, uh, and, uh, he doesn't want to go to trial on this if he, uh, uh, if the law he was applying, uh, was, uh, sufficiently ambiguous that a person in his position wouldn't clearly know it was established. I mean, in this case, we have no case law, uh, uh, on which he would focus on, uh, and, uh, uh, yet he's, uh, you're asking him to be answerable to, uh, what's the addendum in this case? It's $500,000 in damages. $500,000. Yes, Your Honor. And he's a public official, and you're going to hold him, he's going to lose his house and his car. I mean, uh, it seems to me the whole purpose of qualified immunity is to encourage people to serve in the public service, uh, without that exposure, and unless they deliberately violate the law. So that, uh, you're arguing that because there's an affirmative defense in the statute, which he would have to prove, he doesn't, he, he has to then stand trial. Uh, in other words, somehow qualified immunity is avoided. I don't understand the reasoning at all of it, uh, mechanically, and I, I, uh, I must say if the whole purpose of qualified immunity is to give the man a chance to argue, I didn't know I was violating the law. And therefore, I'm not going to be personally held for damages. You're arguing that, oh, he has to answer, he has to, uh, we have an affirmative defense of good faith, uh, and, uh, he has to go to trial, uh, take depositions and prove that. Uh, that's totally contrary to the whole notion that we're protecting public officials. So that does take me to the court, uh, does adopt the Wyatt framework here and looks to whether qualified immunity is available as a threshold matter. That takes me into the, the second part of the Wyatt analysis itself looks at whether there are strong reasons that support reading that qualified immunity defense into the Family Medical Leave Act. And here we do contend that there... Why do you have to read it into an act? You don't read, you read it into any liability. The, the, the reason for the immunity is not based on an act. The reason for the immunity is that a public official is going to be held personally liable for damages. And in this case, you're asking for a half a million dollars for this guy who might have made a bad judgment or not. And the question is, if he did it deliberately, he's responsible. That's what the purpose of qualified immunity is. It's not a, a balance between whether there's a good faith defense in the statutory claim and his personal liability. You're putting him to suit. So... Which violates the immunity in and of itself. The Supreme Court initially formulated a qualified immunity defense in Section 1983 litigation because Section... It's all over. It's not just there. Qualified immunity is any public official who is being held liable for damages. Are you, are you aware, I asked your colleague about the Supreme Court applying qualified immunity outside of the 1983 in Bivens context. I didn't see any cases where that had been done. Do you agree? Yes, Your Honor. The Supreme Court specifically has only applied the Wyatt framework in Section 1983 cases themselves. But the Fifth Circuit did recently adopt the Wyatt framework in the context of the Fair Labor Standards Act. Right. So it's not, this would not be the first instance of this test applying to a federal statutory scheme outside of Section 1983. Yeah. My point was really in terms, I mean, it was intended to, I think, be somewhat sympathetic to at least part of your argument that, you know, the notion that qualified immunity applies to all public officials regardless of the claims. You know, that may be the result, but we don't have the Supreme, that's, well, the Supreme Court's application of it hasn't gone that far. And to the point that I was making with Judge Niemeyer's question earlier, the Supreme Court did initially formulate qualified immunity in Section 1983 specifically because that statute itself did not provide specific defenses that were incorporated. But here the Family Medical Leave Act is distinguishable because itself does provide a complete remedial scheme. It includes remedies for plaintiffs to assert, and it also provides for defenses that employers may raise. And your, so, and your position is not that those defenses equate to qualified immunity. They clearly don't. They only, they only limit, they only limit, you know, some sort of damages. But your point is that Congress took the, you know, if Congress engaged in a process of deciding remedies, that indicates they were engaged in it and elected what to include and what not to include. And that's indication they didn't intend for qualified immunity to apply when they'd taken the time to consider what defenses might exist. Yes, Your Honor. And that's the exact decision that the D.C. Circuit reached in Berry v. Funk where it declined to read qualified immunity into the Electronic Communications Privacy Act. But let me, let me ask you this. I mean, you didn't raise it below. It comes up in the response of brief. Um, you know, the defendant does address it. You know, Judge Rushing mentions, I think, you know, fairly that it's a legal issue that we can, we can do, and you've indicated that we can do it. But, you know, it, you know, all we, you know, at least, it's a pretty big decision. There's not a case on it, I don't think, on this statute anywhere that I saw in the country from an appellate court, if I recall. So, and we've, you know, got one side only had a reply brief to deal with it. You know, why should we deal it now? Why shouldn't we deal with the issue that the district court ruled on? You know, flag it as an important issue and send it back for the district court to do that. So, I'd point this court to the Fifth Circuit's decision in Stramaski v. Lawley. And there the court did excuse a potential forfeiture issue to consider the availability of qualified immunity under the Fair Labor Standards Act. And there the court itself had raised the issue for the first time on appeal. It was not raised by the parties, even in their own appellate briefing. But here the crucial difference is that the issue was raised in our briefing on appeal. And then what the opposing counsel did have the opportunity to reply to that briefing as well and assert arguments to the contrary of our position. So, it has been fully briefed to the point that this court can and should decide it today, rather than sending it back on remand. And so, turning back to the WIAT framework itself as well, a second reason to not read qualified immunity into the statute is that the Family Medical Leave Act enumerates a national and uniform standard for unpaid medical leave. Isn't, I mean, and you might be right about that, that the policy arguments are relevant. But isn't like the preliminary question, I mean, part of what you just said is a reason not to read this into the statute. So, it's not in the statute, right? We have to have some reason to think that Congress wanted an immunity, it decided not to write in the statute, right? And in the 1983 context, the Supreme Court explained to us how the causes of action that were being brought, if they look at the cause of action and analyze whether there have traditionally and historically been immunities that applied, and that gave the court reason to think that Congress meant to adopt all of that when it wrote the statute, right? But here we have to, we have to start at the beginning, right? What, what gives us reason to think Congress meant to incorporate immunities it chose not to write down in this statute? So, that does go to the first factor of the WIAT framework, which is the analogous common law tort piece. And as our briefing details, we were unable to identify an analogous common law tort with that well-established history of immunity, and Hall similarly does not provide an analogous tort of his own that carries that history of immunity in the context of Family Medical Leave Act interference claims. And so there isn't that, that history of immunity that the Supreme Court did find in cases such as Pearson that justified permitting a qualified immunity defense in Section 1983. And importantly as well, Hall's briefing does assert that qualified immunity is the default unless Congress expressly abrogates it, but the Supreme Court's case law does state that it has only read qualified immunity into statutes when doing so has been supported by a history of immunity firmly rooted in the common law. But it brings the, you know, we all, we like to say things like it brings the old soil with it, right? That's the reason that the Court has, has read these immunities in. It's not as though immunity exists and the judges get to just make up immunities willy-nilly, right? And so we have to look at the old soil here which, you know, it's maybe unsurprising you couldn't find any because that's in your interest not to find any, but your opponent also didn't and I'm having a hard time coming up with something that would be analogous. This seems like kind of a new right that hadn't previously existed in a new framework and there's no reason to think there's any old soil that's clinging to these roots. And so first, yes, that we were not able to identify an analogous tort, but we did point out three in our briefing, wrongful discharge, retaliatory discharge, and tortious interference with the contract that do come a little bit closer to being analogous, although we don't believe they are a good fit. But even then looking beyond whether they're analogous into that history of immunity for those torts, we did not find case law that demonstrated that firmly rooted history of immunity for those three specific torts. And so without finding that analogous common law tort with a well-established history of immunity, that is sufficient alone under the Wyatt framework to not read qualified immunity into the statute before the court even gets into the strong reasons that could or could not support reading the defense into the failing medical leaver. Right. And those policy arguments that in this context, you have public employees on both sides, right, of any employment claims. So there's a disincentive for the defendant to become a public employee because he's going to be personally liable, but then a disincentive for the plaintiff too, right? Because he's stripped of, you know, FMLA rights he would have if he were a private employee. If we're going to move to step two of Wyatt. Right. And so that was the earlier and I was making the first point about the one reason to not read qualified immunity into the statute is that it enumerates a complete remedial scheme that provides both remedies and defenses that look after the interests of both employers and employees. What's a policy of we afford qualified immunity to officers who use allegedly excessive force under the Fourth Amendment? A response to that, Your Honor, would be that in section 1983 cases, for example, where an officer is being sued for... I'm talking about a federal officer. Right. So in an instance of that, that instance is a public official performing functions that are inherent to their public office, different from that of a private actor. But here under the Family Medical Leave Act, there isn't that distinction between public and private employers when they're... I didn't understand that. The difference of a police officer performing a service for the government is different from an attorney who represents the government. So the difference, Your Honor, would be, for example, a police officer compared to maybe a private security guard or private prison guard... I'm talking about... I'm saying what's the policy? We have an attorney representing the government and we don't give him immunity, but we give the officer who makes the arrest immunity. To clarify, the point I'm attempting to make is that the difference between a public employer and a private employer is not meaningful under this particular statute because they're implementing employment functions that are essentially the same regardless of whether it's a state agency or a private company. And so reading qualified immunity into this statute would undermine that national and uniform standard for unpaid medical leave. Except the purpose of immunity is not related to a particular statute enforcement. It's related to public service and the idea that we're holding public officials personally liable for damages. Right. But doing so would create an uneven standard for this, because it would permit public employers to raise a defense that is not similarly available to private employers. And it does impair a plaintiff's ability to recover damages in an instance here where we do allege that there was FMLA interference. And so that undermines the Act's purpose of creating that uniform and national standard. Can we... You're getting close to the end of your time and we had a good discussion on the qualified immunity issue. I'm having more trouble with the theory that you violate the RAG, much less that it was clearly established. Judge Niemeyer talked about the importance of the word deficiency. It seems to me that's a pretty compelling reason to talk about clarification and authorization different than completeness and sufficiency. Even if there's a little ambiguity, there's at least a solid reading contrary to the way the district court read it, it seems to me. What's your position on that? So first, I'd point the court to the words any deficiency. Any means every, such that it includes all types of deficiencies. But why is clarification and authentication... I mean, it says any deficiencies as set forth. I mean, so that's the point. First of all, any deficiencies as set forth in the prior section, the prior section sets forth deficiencies in terms of completeness and sufficiency. And then in, you know, 307, there's no description of clarification and authentication as a deficiency. Nowhere does the RAG say those are deficiencies. I see that my time has expired. May I briefly answer? Sure. So the word deficiency, even based on the definition provided by Hall, is lacking a necessary quality or element. And so here a necessary element of an FMLA certification form is that the medical section is completed by the employee's doctor and not the employee, as it was in this case. And the words as set forth then incorporate the procedural aspects of section 305C. It says after though, it puts a temporal aspect. After, it doesn't say in the manner of. It says you address the authentication after addressing the deficiencies in section C. And in section C, it specifically refers to those two aspects, incompletion and lack of clarity as such deficiencies. And so the prior one says such deficiencies as set forth in A. And it says after those have been addressed. Now, in this case, of course, there were no such deficiencies. So that would leave the authentication, which is not a deficiency. It's a, it's a falsity. So first, your honor, Hall suggests a reading of the regulation that suggests that it would be the deficiencies set forth in section 305C, but it says any deficiency. Any in 305, but it says after. It doesn't say in the manner of handling it. It says after addressing the deficiencies in 305. And just very briefly, I'd point the court to the Department of Labor's 2008 revisions to these regulations. And the department does discuss section 307A, noting that it requires that employers permit employees to cure any deficiency, quote, pursuant to the procedures set forth in section 305C, which demonstrates that section 307A does require that seven-day cure period for all types of deficiencies. And so. Okay, I understand. I understand what you're saying. And if there are no further questions, we ask this court to dismiss this appeal for lack of jurisdiction or in the alternative to affirm the district court's summary judgment denial. All right. Thank you very much. All right. Mr. Schnetzler. Thank you, your honors. First, very quickly, with respect to the argument made by Mr. Kardashian as to the revisions, I think it's important to keep in mind as well that that language about, you know, should ask the employee for permission to remedy anything about the form that was excised completely. And that's then we're left with this sort of what I would say regulatory quagmire of language. And perhaps it's more clear as we've submitted and Judge Niemeyer, as you suggested, but that language was taken down. If it was fraudulent, if you had a fraudulent certification, what's the, how was that cured? Is there any cure to a fraudulent certification? I don't think there is. And I think that that gets to the heart of what this court has said in the Atkins case is that it doesn't allow, you know, employee to, you know, impunity to commit fraud on his employer. In this case, it's probably not fraud, but he did write out and fill out what the doctor should have filled out. I know perhaps he says I was trying to save time or whatever, but that was pretty false and he deliberately did that. Maybe he can get some cover that he was going to present it to the doctor or whatever. But it seems to me the whole notion of authenticity is different from correcting an insufficiency, a deficiency. I should make clear, that's a fair point. That was a hypothetical. Authenticity would include fraud and I'm not suggesting that's what we have here. I was saying that was part of what would fall under there. Correct. And that really wasn't the position we took. Judge Rushing, if I could return back to your question during my opening with respect to, you know, sort of addressing whether qualified immunity even applies and how we sort of wrestle with that in regard to what the Supreme Court said in Wyatt. First, I believe, or I want to make clear, I believe this court can assume without deciding this question. It can assume that qualified immunity applies just based on the posture we are here. Yeah. Is there something to be gained? I guess that's my question. Is there something to be gained by sending that question back to Judge Cullen and asking him in the first instance to analyze whether qualified immunity applies to the FMLA and then if he decides it doesn't, taking a second interlocutory appeal to resolve it then or, you know, and the answer, I'm not trying to suggest there's nothing to be gained because you, yeah, you only got to address it in your reply. But what's, is there something to be gained by that procedure? No, I think it's inefficient because I think you're right. We'd be right back here having the same conversation, probably just a more focused on whether or not it applies. But, you know, I think the court has in other contexts assumed certain questions without deciding and reaching the issue that was actually presented. Do you understand qualified immunity only be applied to state officials? For purposes of FMLA or just in general? No, I mean generally. The doctrine of qualified immunity, isn't it applied to federal officials? It applies to federal as well. Vivian's action would be an example, I believe. The whole law enforcement area. Correct, Your Honor. And so, I think the court can't assume without deciding specifically because other circuit courts of appeals have, have determined that, or stated that qualified immunity applies in the FMLA context. They haven't really explained it, right? You had like your, your difference between determined that, stated that, like they've given no explanation, right? They've just applied it on the assumption that qualified immunity applies to every law under the sun, it seems like. Well, I don't think that they've taken that position and I believe it's the Straminski case that my colleague referenced. So, they actually specifically referenced, yes, we've decided it applies in the FMLA context, but we're not going to apply it in that context, in that case. And I can't remember, I think that was an FL, FLSA case. And of course, but the Eighth Circuit's also applied it as well in Sterling versus Board and in Hager versus Arkansas Department of Health. And as I already mentioned, the Fifth Circuit has applied it. So, what about this situation? I don't know if it's more pragmatic than legal, but if we were to decide that issue, say there's no qualified immunity, hypothetically, then, you know, it goes back without us addressing the clearly established issue. And assume also we think the clearly established issue is wrong. That's kind of left untouched and the case proceeds on that basis, I guess. And, you know, there's a chance to remedy that later. But, you know, that's just, we may not agree. Those are just hypotheticals on two issues. But if we were to, if you imagine that world, we got, you know, we got some inefficiency in that scenario too. Is that fair? Do you see what I'm saying? I do. I see I'm out of time, but may I respond? Thank you. I do agree that there would be some inefficiency there. But again, the way this sort of argument that it doesn't even apply in this post hoc kind of backdoor jurisdictional argument that really didn't make sense to begin with is a bit, I think, strained. And whether, you know, this court doesn't have to decide that whether it applies if the issue before it is whether the regulations clearly established the right here. And it just goes back. This court isn't making a determination one way or the other as it's done in other cases. It's just address the narrow issue before it. And so that's what we would ask your honors to do is address the narrow issue before your honors. And that's whether or not these regulations clearly establish the cure period for authentication purposes. And we'd ask that you reverse the judgment of the district court and our judgment in favor of Mr. Hall. Thank you very much. Thank you. We'll come down and greet counsel and proceed on the last case. I think it's merits comment publicly so that you can hear that. So, Mr. Kardashian, I thought you did an excellent job and you will be many times before us again and doing a good job. We'll come down and congratulate you.
judges: Paul V. Niemeyer, A. Marvin Quattlebaum Jr., Allison J. Rushing